**\*NOT FOR PUBLICATION\***

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDI GARTEN, Individually and as guardian ad litem for the minor plaintiffs OWEN HAVENS, SCARLETT HAVENS, and MASON HAVENS, her children,<br><br>                        Plaintiffs,<br><br>         v.<br><br>INTAMIN AMUSEMENT RIDES INT. CORP. EST., et al.,<br><br>                        Defendants. | Civ. Action No. 19-20040 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

In this products liability and negligence action, Plaintiff Brandi Garten ("Plaintiff") has sued defendants Six Flags Great Adventure, LLC ("Six Flags") and Intamin Ltd. and Intraride, LLC (together, the "Intamin Defendants"), for injuries sustained by Plaintiff while riding on the Kingda Ka Roller Coaster (the "Kingda Ka") at the Six Flags Great Adventure Amusement Park ("Great Adventure") in Jackson, New Jersey. Plaintiff asserts a claim against Six Flags, as owner and operator of Great Adventure, for negligence, and three products liability and warranty claims against the Intamin Defendants, as the entities who manufactured and designed the seats and harness devices in the Kingda Ka. Presently before the Court are two separate motions, by Six Flags and the Intamin Defendants, respectively, to dismiss Plaintiff's Complaint. Both motions are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having considered the parties' submissions, the Court finds that Plaintiffs' negligence claim against Six Flags is not subsumed by the New Jersey Products Liability Act ("NJPLA"); further factual

development is necessary to determine whether the statute of repose bars Plaintiff's product liability and warranty claims against the Intamin Defendants; and Plaintiff has stated a claim against the Intamin Defendants based on a failure to warn, but she has not sufficiently pled claims premised on a design defect, manufacturing defect, or breach of express warranty. Accordingly, for the reasons set forth below, the motions of Six Flags and the Intamin Defendants are **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    Factual Background[1]

On August 24, 2019, Plaintiff traveled with her son to Great Adventure in Jackson, New Jersey.  (TAC ¶ 17.)  Plaintiff's son asked if she would accompany him for a ride on the Kingda Ka Roller Coaster, and Plaintiff agreed.  (*Id*.)  Upon entering the car where she and her son would be seated during their ride, Plaintiff sat and pulled down the harness device attached to the seat.  (*Id*. at ¶ 18.)  As she waited for the ride to begin, Plaintiff remained in her seat, with the harness device attached to the seat firmly tightened around her shoulders.  (*Id*. at ¶ 20.)  When the Kingda Ka finally departed, the car that she was riding accelerated rapidly, and, as it followed the tracks sharply upward, Plaintiff grabbed the handles and pressed herself back.  (*Id*.)  Plaintiff felt herself suddenly jerked downward, so that her chin was pushed into her chest and she felt severe pain down the back of her neck.  (*Id*.)  As a result of this single ride on the Kingda Ka, Plaintiff alleges that she sustained three herniated discs in her neck, leading to a cascade of adverse medical events.  (*Id*. at  ¶ 27.)

---

[1]    The pertinent facts in this section are drawn from the operative Third Amended Complaint ("TAC") and are assumed to be true for the purposes of the present motions.

2

According to Plaintiff's complaint, before the ride began, attendants working at the Kingda Ka walked by without performing any inspection of the physical restraints holding Plaintiff in the seat of the roller coaster, and without adjusting the seat and/or harness device to ensure that Plaintiff was properly restrained. (*Id*. at ¶¶ 18, 19.) Plaintiff further alleges in her complaint that attendants at the ride failed to warn Plaintiff that she faced the danger of severe "whiplash" from the extreme speed and torqueing forces generated by the Kingda Ka, and that, unless she was able to maintain her head and neck in a stationary position against the considerable forces that might be imposed upon her head and neck from the torqueing of the Kingda Ka, she was not a candidate for safely riding it. (*Id*. at ¶ 19.) In her complaint, Plaintiff alleges that there were no visible warnings of "whiplash" on the seat or harness device. (*Id*.)

B. **Plaintiff's Claims**

In her complaint, Plaintiff asserts a single claim against Six Flags for "Negligence," (*see* TAC ¶¶ 37-39,) as well as three separate claims against the Intamin Defendants for: (1) "Products Liability/Design Defect/Manufacturing Defect" (*see* TAC ¶¶ 30-33); (2) "Products Liability/ Failure to Warn" (*see* Second Claim for Relief, TAC ¶¶ 34-36); and (3) "Breach of Express and Implied Warranties" (*see* Fourth Claim for Relief, TAC ¶¶ 40-42).[2] In support of her "Negligence" claim against Six Flags, Plaintiff alleges that "Six Flags . . . in its capacity as operator of Great Adventure . . . was responsible for insuring that any and all rides and other facilities operated at Great Adventure were operated and administered in a manner safe for its patrons, and that they

---

[2] In her complaint, Plaintiff also asserts claims against both Six Flags and the Intamin Defendants for "Loss of Consortium, Society, and Services" on behalf of her three children. (TAC ¶¶ 43-44.) Six Flags and the Intamin Defendants both move to dismiss Plaintiff's claims for loss of consortium. In her motion papers, Plaintiff concedes that she has not stated a valid claim for loss of consortium. (*See* Pl. Opp. to Six Flags Mot. at 9, ECF No. 21; Pl. Opp. to Intamin Defs. Mot. at 23, ECF No. 20.) Given Plaintiff's concession, Six Flags and the Intamin Defendants' motions are granted with respect to Plaintiff's claim for loss of consortium, and the Court will dismiss those claims with prejudice.

3

were provided with any and all instructions they might require, to insure that they were able to participate in the said rides safely." (TAC ¶ 16.) Plaintiff further asserts that Six Flags "w[as] careless and negligent in failing to properly harness Plaintiff . . . into the seat of the Kingda Ka Roller Coaster where she was placed, so that she could ride in it safely, and/or to advise Plaintiff . . . that she could not safely ride the Kingda Ka Roller Coaster by reason of her body size, as required by applicable law." (*Id*. at ¶ 38.) In addition, Plaintiff asserts that, "[a]s a direct and proximate result of the aforesaid negligent conduct of [Six Flags], Plaintiff . . . sustained severe and permanent injuries of both a physical and emotional nature, and has incurred great hospital and medical expenses for the care and treatment thereof." (*Id*. at ¶ 39.)

In support of her three claims against the Intamin Defendants, Plaintiff alleges that the Intamin Defendants "were responsible for the construction and installation of the seats and harness devices contained in the cars at the Kingda Ka Roller Coaster" and that, "[u]pon information and belief, [the Intamin] Defendants . . . participated in the design, manufacture, sale, packaging, and/or installation of the harness devices and seats contained within the Kingda Ka Roller Coaster." (*Id*. at ¶ 10.) With respect to her claim for "Products Liability/Design Defect/ Manufacturing Defect," Plaintiff asserts that the "Kingda Ka Roller Coaster incorporated a harness device that fails to properly restrain the head and neck of the rider to protect against 'whiplash' type injuries, risking injury to the cervical spine of individual riders, and putting them at unreasonable risk of whiplash type injuries to the intervertebral discs of their necks and spines." (*Id*. at ¶ 31.) Regarding her claim for "Products Liability/Failure to Warn," Plaintiff asserts that the Intamin Defendants "failed to adequately warn users of the [defective] Kingda Ka car seats, seat backs, and harness devices, of the dangers of uncontrollable, and irreversible 'whiplash' injury while the ride is progressing, [and] from the extreme speed and extreme torqueing forces generated

4

by the Kingda Ka Roller Coaster while it is in motion." (*Id*. at ¶ 35.) As to her claim for "Breach of Express and Implied Warranties," Plaintiff asserts that the Intamin Defendants "jointly marketed and sold the Kingda Ka Roller Coaster and/or components of it, and jointly engaged in a variety of marketing activities in connection with the said Roller Coaster, involving the express and implied warranty to patrons . . . that the said Roller Coaster, and all of its component parts, was safe and fit for its intended use . . . [when] [i]n fact, however, Plaintiff has now learned that was not the case." (*Id*. at ¶ 41.) Finally, in connection with all three claims against the Intamin Defendants, Plaintiff asserts that she "has suffered severe, painful, and disabling bodily injuries that will leave her wholly or partially disabled, for the remainder of her life . . . [and] has suffered great pain and anguish of body and mind as a result of said injuries, and has incurred great hospital and medical expenses for the care and treatment thereof." (*Id*. at ¶ 32; *see also id*. ¶¶ 36, 42.)

Plaintiff demands the following types of relief against Six Flags and the Intamin Defendants: (1) "compensatory damages, for pain and suffering (past and future), disability, loss of income, loss of enjoyment of life, emotional injuries, and other damages sustained by Plaintiff . . . in the aforesaid incident of August 24, 2019"; (2) "compensatory damages, for the loss of services sustained by Plaintiff's children"; (3) "punitive damages, pursuant to the New Jersey Products Liability Act";[3] (4) "interest, and the costs of this suit"; (5) "such other and further relief

---

[3] In their motions, Six Flags and the Intamin Defendants both move to dismiss Plaintiff's claim for punitive damages. (*See* Six Flags Opening Br. at 12-14, ECF No. 15-3; Intamin Defs. Opening Br. at 33-34, ECF No. 17-1.) In her opposition papers, Plaintiff concedes that she has "not stated a valid claim for punitive damages, at this juncture." (*See* Pl. Opp. to Six Flags Mot., at 9, ECF No. 21; Pl. Opp. to Intamin Defs. Mot. at 23, ECF No. 20.) However, Plaintiff further states that "[her] claim for punitive damages should be denied without prejudice so that, in the event evidence uncovered during discovery supports a claim for punitive damages, Plaintiff[] can amend [her] complaint to include it at the time it is discovered." (*Id*.) Given Plaintiff's concession, this Court grants the motions of Six Flags and the Intamin Defendants' to the extent they seek to dismiss Plaintiff's claim for punitive damages. If evidence is later uncovered to support a claim for punitive damages, Plaintiff may file a separate motion seeking leave to amend her complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

as a court and jury may deem appropriate, under the circumstances set forth herein." (TAC, Prayer for Relief ¶¶ 1-5.)

### C. Procedural History

On November 11, 2019, Plaintiff commenced the instant action with the filing of a complaint in federal district court. (*See* ECF No. 1.) In addition to Six Flags and the Intamin Defendants, Plaintiff's original complaint named two groups of fictious defendants—specifically, "John Doe Defendants 1-20" and "ABC Corporations 1-10"—as well as the following real parties as defendants: Intamin Amusement Rides Int. Corp. Est.; International Amusements Inc.; Ingenieur-Buro Stengel GmbH; Martin & Vleminckx Ltd; Martin & Vleminckx USA, LLC; Six Flags Great Adventure, LLC; and Six Flags Theme Parks Inc. Several of the non-fictious defendants were subsequently dismissed from this action by way of stipulations. (*See* ECF No. 7 (stipulation dismissing Martin & Vleminckx Ltd. and Martin & Vleminckx USA, LLC), ECF No. 16 (stipulation dismissing Six Flags Theme Parks Inc.)[4]

On December 19, 2019, Plaintiff filed a First Amended Complaint. (*See* ECF No. 5.) On January 15, 2020, Six Flags filed its motion to dismiss (*see* ECF No. 15), and, on January 24, 2020, the Intamin Defendants filed their motion to dismiss (see ECF No. 17). On February 18, 2020, Plaintiff filed oppositions to both motions. (*See* ECF Nos. 20, 21.) Thereafter, on August 4, 2020, the Court held a teleconference with the parties to discuss Plaintiffs' naming of "John Doe"

---

[4] The Court notes that two of the named defendants, Intamin Amusement Rides Int. Corp. Est. and Ingenieur-Buro Stengel GmbH, have not responded to the Complaint or otherwise appeared in this action. Furthermore, Plaintiff has not filed any proof of service as to those parties. Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Accordingly, Plaintiff is hereby given notice that the Complaint will be dismissed as to the unserved defendants, unless Plaintiff shows cause in writing for its failure to prosecute this action against those defendants within fourteen (14) days of the date of the Order accompanying this Opinion.

6

defendants in their First Amended Complaint, and the jurisdiction of this Court. In particular, the Court expressed concern about whether complete diversity was satisfied in this case, since Plaintiff's Amended Complaint averred that she resides in New Jersey, while simultaneously averring that "John Doe Defendants 1-20 are all New Jersey residents." (First Amended Complaint ¶ 18, ECF No. 5.) To avoid the necessity of having to dismiss the Complaint for lack of jurisdiction, the Court permitted Plaintiff to amend her complaint to remove the allegations relating to the "John Doe" defendants and their residency.[5] On August 4, 2020, Plaintiff filed a Second Amended Complaint, and while counsel for Plaintiff removed all references to the "John Doe" defendants, he went further and included additional substantive allegations. (*See* Second Amended Complaint, ECF No. 24.) Thereafter, on August 7, 2020, the Court ordered that Plaintiffs' Second Amended Complaint be stricken. (*See* ECF No. 27.) The Court further directed Plaintiff to file a Third Amended Complaint removing the allegations relating to the "John Doe" defendants, but which would remain identical to Plaintiff's First Amended Complaint in all other respects. (*Id*.) On August 10, 2020, Plaintiff complied with the Court's instructions with the filing of the operative Third Amended Complaint. (*See* ECF No. 28.)

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must set forth enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that permits a reasonable inference that the defendant is liable for

---

[5] On the August 4, 2020 teleconference, the Court cautioned Plaintiff that, should it turn out that an indispensable non-diverse defendant is later identified, it may then become necessary for the complaint to be dismissed for lack of jurisdiction.

the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the merits of a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

**III.   DISCUSSION**

The Court first considers the motion by Six Flags to dismiss Plaintiff's claim for negligence, and then proceeds to consideration of motion by the Intamin Defendants to dismiss Plaintiff's products liability and warranty claims.

**A.   Motion by Six Flags**

In its motion to dismiss, Six Flags argues that Plaintiff's claim for "Negligence" is subsumed under the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-2, and that Six Flags, as an amusement park owner and operator, is not a "manufacturer, distributor, or seller of a product" subject to liability under that statute. (*See* Six Flags Opening Br. at 5-9, ECF No. 15-3.) The Court agrees that Defendant Six Flags is not a proper defendant for purposes of an NJPLA products liability claim. Only manufacturers and sellers of products can be held liable for design defects, manufacturing defects, and failures to warn under the NJPLA. N.J.S.A. § 2A:58C-2. A "seller of a product" or "product seller" under the NJPLA does not include "a provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services." N.J.S.A. § 2A:58C-8. Courts in this district have concluded that rides and attractions at amusement parks are incidental to amusement parks' furnishing of services and therefore that amusement parks are not "sellers" of their rides and attractions. *See, e.g.*, *Fabricant v. Intamin Amusement Rides Int. Corp. Est.*, 2020 WL 373348, at *7 (D.N.J. Jan. 23, 2020) (Thompson, J.) (concluding, in action involving injuries on Kingda Ka, that Six Flags is not a "seller" for purposes of NJPLA); *Tafaro*

8

*v. Six Flags Great Adventure, LLC*, 2018 WL 1535289, at *3 (D.N.J. Mar. 29, 2018) (Wolfson, J.) (stating that "[c]ourts that have considered the boundaries of the definition of 'product seller' under the NJPLA are unanimous in their conclusion that an amusement park owner and operator—and indeed Six Flags in particular—is not a manufacturer, distributor, or seller of the rides and attractions to which it sells access"); *J.Z. v. Six Flags Great Adventure*, LLC, 2016 WL 5419420, at *1 (D.N.J. Sept. 28, 2016) (finding that "Six Flags is not a 'product seller' of amusement park rides under the NJPLA").

The Court disagrees, however, that the NJPLA subsumes the entirety of Plaintiffs' claim against Six Flags. The gravamen of Plaintiffs' claim against Six Flags is not that it sold a defective product to Plaintiff; rather, her claim is based on allegations of negligence by Six Flags (and its employees) in the operation of the Kingda Ka. Courts in this district have found that, while the NJPLA covers causes of action arising out of harm caused by defective products, it does not cover causes of action arising out of harm caused by negligent actions of employees. *See Fabricant*, 2020 WL 373348, at *7 (finding that a plaintiff stated claim for negligence against Six Flags based on allegations that its employees "improperly harnessed [the plaintiff] into his seat on Kingda Ka" and "failed 'to advise Plaintiff Christopher Fabricant . . . that he could not safely ride the Kingda Ka Roller Coaster by reason of his body size.'"); *J.Z.*, 2016 WL 5419420, at *3 (stating that, "[w]here . . . the [c]omplaint alleges harm arising from the negligent conduct of Six Flags employees rather than a defective product, the NJPLA does not bar recovery to those claims"); *Guillen v. Six Flags Great Adventure*, LLC, 2015 WL 9582141, at *5 (D.N.J. Dec. 29, 2015) (McNulty, J.) ("Six Flags' heads-I-win, tails-you-lose position is that this must be an NJPLA case, and that the NJPLA does not apply as a matter of law. That is very close to a claim that there is no such thing as an action against an amusement park based on injuries sustained on a ride. That

simply is not so . . . ""). Similarly, here, the Court finds that the NJPLA does not subsume Plaintiffs' claim to the extent it is premised on negligence in the operation of the Kingda Ka, including the actions of Six Flags's employees. Accordingly, Six Flag's motion is denied with respect to Plaintiff's negligence claim.[6]

### B. Motion by the Intamin Defendants

As a threshold matter, the Intamin Defendants' contend that all of Plaintiff's claims are time-barred by New Jersey's ten-year statute of repose. In addition, the Intamin Defendants raise several arguments for dismissal that are specific to each claim. The Court first considers whether the statute of repose applies to all of Plaintiff's claims, and then proceeds to Plaintiff's claim-specific arguments.

#### 1. Statute of Repose

The relevant part of the statute of repose bars all actions "to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property . . . or for an injury to the person . . . arising out of the defective and unsafe condition of an improvement to real property" brought against the persons performing such services more than ten years after the services are performed. N.J.S.A. § 2A:14-1.1(a). The New Jersey Supreme Court has articulated three factors that must be met before an action is time-barred under the statute: "(1) the injury sustained by plaintiff resulted from a defective and unsafe condition of an improvement to real property; (2) [the defendant was] responsible for performing or furnishing the design, planning, surveying, supervision of construction, or construction of the improvement; and

---

[6] In its motion papers, Six Flags also takes issue with allegations in Plaintiff's complaint that suggest that Plaintiff may be attempting to assert a cause of action for infliction of emotional distress. (*See* Six Flags Opening Br. at 10-12, ECF No. 15-3.) In its opposition papers, Plaintiff responds that her complaint "nowhere states or suggests" such a claim. (Pl. Opp. to Six Flags Mot. at 7-8, ECF No. 21.) The Court construes this statement by Plaintiff as a representation that she does not intend to assert a cause of action sounding in infliction of emotional distress against Six Flags.

(3) the injury occurred more than ten years after the performance or furnishing of the services." *Dziewiecki v. Bakula*, 180 N.J. 528, 853 A.2d 234, 236 (2004). The statute of repose is to be "construed broadly to effectuate its purpose." *State v. Perini Corp.*, 221 N.J. 412, 113 A.3d 1199, 1208 (2015). In this case, the parties do not dispute that the second *Dziewiecki* factor is met—*i.e.*, that Intamin Defendants, the entities who manufactured and designed the Kingda Ka, are in the class of defendants protected by the statute of repose. The parties also do not dispute that Plaintiff's injury occurred more than ten years after the Kingda Ka opened. Thus, the dispute here is whether the seats and harness devices in the Kingda Ka, which allegedly caused Plaintiff's injuries, constitute "an improvement to real property." Importantly, the statute of repose does not shield liability for "a standardized product, which happened to be installed in a construction project." *Cherilus v. Fed. Exp.*, 435 N.J. Super. 172, 87 A.3d 269, 278 (App. Div. 2014) (citing *Dziewiecki*, 853 A.2d 234 and *Perini Corp.*, 39 A.3d 918). Thus, in the present case, the Court must determine whether the seat and harness devices in the Kingda Ka are "standardized" or "mass-produced," or, instead, specially designed.

The New Jersey Supreme Court's decision in *Dziewiecki* is instructive. In that case, the defendants were involved both in the construction of an in-ground swimming pool, as well as in the manufacturing of a standardized "pool kit" product incorporated into that pool. *Dziewiecki*, 853 A.2d at 236. The court held that defendant's activities in constructing and installing the swimming pool were protected by the statute of repose, but the defendant's activities in manufacturing the pool kit were not, because the pool kit itself was not an "improvement to real property," despite its being incorporated into a swimming pool. *Id.* at 236-237. In arriving at this decision, the court explained "that when a person in effect wears 'two hats' (undertakes activities covered by the [statute of repose] and comes under the product liability statute), and the cause of

11

the injury is attributable to both, the responsibility should be allocated between the two." *Id*. at 237.  Thus, "[t]hat portion of the liability that relates to activities that fall within the [statute] would not after ten years be actionable, and that portion of the liability that derives from a product liability cause of action would be covered by the limitations period set forth in N.J.S.A. 2A:14-2." *Id*.

In this case, the Kingda Ka Roller Coaster appears to stand on the same footing as the swimming pool in *Dziewiecki*, and can be viewed as an "improvement to real property," whereas if the seats and harness devices that are at issue in this case are standardized components, they would stand on the same footing as the "pool kit" at issue in *Dziewiecki*.  That said, while the parties have made arguments to this effect, the operative Third Amended Complaint does not include facts on this issue, and on a motion to dismiss the Court usually cannot consult material extraneous to the pleadings.  *See* Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.").  Although it well may be that the seats and harness devices that are present in the Kingda Ka are "standardized" or "mass-produced," and therefore do not fall under the statute of repose, the Court is unable to say with certainty at this stage whether that is the case without further factual development.  The Intamin Defendants may raise this issue in a future summary judgment motion, if appropriate.  Accordingly, at this juncture, the Court will proceed to consider the Intamin Defendants' claim-specific arguments.

### 2. Claim for "Products Liability/Design Defect/Manufacturing Defect"

In their respective submissions to the Court, the Intamin Defendants and Plaintiff divide Plaintiff's claim for "Products Liability/Design Defect/Manufacturing Defect" into two separate sub-claims: *first*, a claim based on a design defect; and *second*, a claim based on a manufacturing defect.  Similarly, the Court will also divide the parties' claims into sub-claims for "design defect" and "manufacturing defect" when analyzing the sufficiency of Plaintiff's complaint.

***Design Defect.*** In their motion, the Intamin Defendants contend that Plaintiff's claim based on a design defect is insufficiently pled, because the complaint lacks any allegations of a technologically feasible and alternative design, any allegations regarding comparable rollercoasters, and any allegations relevant to a risk-utility analysis. (Intamin Defs. Opening Br. at 23-27, ECF No. 17-1.) In opposition, while Plaintiff acknowledges that her design defect claim requires allegations of a risk-utility analysis or of an "alternative design," she nevertheless asserts that she has sufficiently alleged one in her complaint. (Pl. Opp. to Intamin Defs. Mot. at 15-17, ECF No. 20.)

Under New Jersey law, a design defect exists if "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . was designed in a defective manner." N.J.S.A. § 2A:58C-2. While a plaintiff is not required to prove anything at the pleading stage, "the courts in this District have, in practice," required a plaintiff to "plead either that the product's risk [of harm] outweighs its [utility], or that an alternate design exists, in order to state a claim for a design defect under the Product Liability–Act." *Tafaro*, 2018 WL 1535289, at *10 (quoting *Mendez v. Shah*, 28 F. Supp. 3d 282, 297–98 (D.N.J. 2014)). To support her claim for design defect, Plaintiff offers the following allegations from her complaint:

- "The defective design and/or manufacture of the aforementioned Kingda Ka Roller Coaster by the [Intamin] Defendants was evidenced, inter alia, by their failure to properly *design the harnesses, seats, and restraints included in the said Roller Coaster in such a way as to eliminated* (sic) *and/or guard against the substantial risk of 'whiplash' type injuries that can result from the extreme speeds and torqueing forces* generated by the Kingda Ka Roller Coaster . . . " (TAC ¶ 4 (emphasis added).)

13

- "Plaintiff . . . faced the danger of severe 'whiplash' type injuries from the extreme speed and torqueing forces generated by the Kingda Ka Roller Coaster . . . *unless she was able to maintain her head and neck in a stationary position, in the face of considerable forces that might be imposed upon her head and neck from the torqueing forces of the said Roller Coaster*." (TAC ¶ 19 (emphasis added).)

- "[T]he car Plaintiff and her minor son were riding in accelerated from 0-128 mph in approximately 3.5 sec, and as it followed the tracks sharply upward, more than 400 feet, the Plaintiff grabbed the handles provided and pressed herself back. Plaintiff felt herself suddenly jerked downward, so that her chin was violently pushed into her chest and she felt severe pain the back of her neck." (TAC ¶ 20.)

- "Plaintiffs' damages are the direct and proximate result of defective design . . . said design defects and/or manufacturing defects being that the said Kingda Ka Roller Coaster incorporated *a harness device that fails to properly restrain the head and neck of the rider to protect against 'whiplash' type injuries*, risking injury to the cervical spine of individual riders, and putting them at unreasonable risk of whiplash type injuries to the intervertebral discs of their necks and spines. (TAC ¶ 31 (emphasis added).)

These general allegations about how the seats of Kingda Ka failed to prevent "whiplash" type injuries say nothing about the relative risks and utilities of the existing design of the seats and harness device on the Kingda Ka, or about whether an alternative, technologically feasible design could have prevented Plaintiff's injuries.[7] Accordingly, the Intamin Defendants' motion is granted

---

[7] The Court acknowledges the examples of possible alternative designs that were submitted by Plaintiff in an exhibit attached to her opposition papers. However, there are no allegations regarding these

*(Footnote continued on the next page.)*

14

to the extent that it seeks dismissal of Plaintiffs' claim for design defect; that claim is dismissed without prejudice.

*Manufacturing Defect.* In their motion, the Intamin Defendants contend that Plaintiff's claim based upon a manufacturing defect is insufficiently pled, because the complaint does not specify how the design of the Kingda Ka deviated from any manufacturing standard or in what other respect it was defective. (Intamin Defs. Opening Br. at 21-22, ECF No. 17-1.) In opposition, Plaintiff asserts that she has, in fact, alleged how the seats and harness devices that are at issue were defective, and she contends that specifying how the design deviated from any manufacturing standard is not required at the pleading stage. (Pl. Opp. to Intamin Defs. Mot. at 17-19, ECF No. 20.)

Under New Jersey law, a manufacturing defect exists if a product "deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. § 2A:58C-2. To support her claim for manufacturing defect, Plaintiffs allege that the Kingda Ka "incorporated a harness device that fails to properly restrain the head and neck of the rider." (TAC ¶ 31). Courts in this district have dismissed manufacturing defect claims when they failed to allege how the product "deviated from any manufacturing standard or in what respect [the product] was defective." *See, e.g., Fabricant*, 2020 WL 373348, at *5 (dismissing manufacturing defect claim involving harness device on Kingda Ka where Plaintiff failed to allege deviation from manufacturing standard); *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J.

---

or any other examples of alternative designs in Plaintiff's complaint, and the Court cannot consider facts that first appear in a party's brief in deciding a motion to dismiss. *See Marks v. Struble*, 347 F. Supp. 2d 136, 148 (D.N.J. 2004) (refusing to consider allegations made for the first time in response to a defendants' motion to dismiss in resolving Rule 12(b)(6) motion); *Commonwealth of Pa ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

2013) (McNulty, J.) (dismissing a manufacturing defect claim involving a firearm where "[t]he [c]omplaint d[id] not allege how the [firearm at issue] deviated from any manufacturing standard or in what respect it was defective"). In this case, Plaintiff's mere allegations that the harnesses device on the Kingda Ka failed to restrain her head and neck is insufficient; indeed, Plaintiff does not explain anywhere in her complaint how the seats and harnesses deviated from any applicable manufacturing standard or from otherwise identical units manufactured to the same specifications. Accordingly, the Intaride Defendants' motion is granted to the extent that it seeks dismissal of Plaintiffs' claim premised on a manufacturing defect; that claim is dismissed without prejudice.

### 3. Claim for "Products Liability/Failure to Warn"

In their motion, the Intamin Defendants contend that Plaintiff's claim for "Failure to Warn" is insufficiently pled, because the NJPLA requires a more detailed factual articulation of "what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances, or even what was the nature of the danger posed by [the roller coaster] for which warning was required." (Intamin Defs. Opening Br. at 27-28, ECF No. 17-1 (quoting *Tafaro*, 2018 WL 1535289, at *11).) In opposition, Plaintiff argues that they have provided sufficient detail about the nature of the warning that was required to be given and that it is not necessary for a plaintiff to recite the exact wording of a warning in order to allege failure to warn under the NJPLA. (Pl. Opp. to Intamin Defs. Mot. at 19-21, ECF No. 20.)[8]

---

[8] In their motion papers, the Intamin Defendants further assert that Plaintiff "likely did receive additional warnings at the actual ride." (Intamin Defs. Reply Br. at 11, ECF No. 22.) This assertion appears to be controverted by Plaintiff's allegation in her complaint that "[t]here were no visible warnings on the seat, or on the harness device." (TAC ¶ 19.) Because, on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff, the Court cannot dismiss Plaintiff's claim based on the Intamin Defendants' proffered factual assertion that Plaintiff was adequately warned.

16

Under New Jersey Law, a manufacturer may be liable for harm caused by a failure to warn if the product "failed to contain adequate warnings or instructions." N.J.S.A. § 2A:58C-2. "An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product." N.J.S.A. § 2A:58C-4. To support their claim for failure to warn, Plaintiff alleges that the Intamin Defendants "failed to adequately warn users of the above-described Kingda Ka car seats, seat backs, and harness devices, of *the dangers of uncontrollable, and irreversible 'whiplash' injury while the ride is progressing, from the extreme speed and extreme torqueing forces generated by the Kingda Ka Roller Coaster* while it is in motion." (TAC ¶ 35 (emphasis added).) The Court finds that this iteration of the required warning is sufficient at the pleading stage. Whether this warning is one that a reasonably prudent person would expect at an amusement park is not ripe for adjudication at this stage. Accordingly, the Intamin Defendants' motion to dismiss is denied with respect to Plaintiff's claim for "Products Liability/Failure to Warn."

### 4. Claim for "Breach of Express and Implied Warranties"

In their motion, the Intamin Defendants contend that Plaintiff's claim for breach of express warranty[9] is sufficiently pled, because the complaint does not allege "what warranty was made, when it was made, where it was made, or by whom it was made" or "identify the actual language [of an express warranty] or source of any alleged warranty." (Intamin Defs. Opening Br. at 4, 31,

---

[9] In their motion papers, the Intamin Defendants also argue that Plaintiff's claim premised on breach of an implied warranty must be dismissed, because such a claim is no longer recognized under New Jersey law following passage of the NJPLA. (Intamin Defs. Opening Br. at 29, ECF No. 17-1.) In her opposition papers, Plaintiff concedes that her claim for breach of implied warranty is subsumed by the NJPLA and, therefore, must be dismissed at this stage. (*See* Pl. Opp. to Intamin Defs. Mot. at 23, ECF No. 20.) Given Plaintiff's concession, the Intamin Defendants' motion is granted with respect to Plaintiff's claim for breach of implied warranty, and the Court will dismiss that claim with prejudice.

17

ECF No. 17-1 (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011)).) In opposition, Plaintiff contends that her complaint "describes the express warranty allegedly made, and allegedly violated, by the Intamin Defendants, in an extremely direct, precise, and straightforward manner, describing it as a warranty by, *inter alia*, the Intamin Defendants, 'to patrons such as Plaintiff Brandi Garten that the said Roller Coaster, and all of *its component parts, was safe and fit for its intended use*.'" (Pl. Opp. to Intamin Defs. Mot. at 21, ECF No. 20 (citing TAC ¶ 41 (emphasis added).)

Under New Jersey law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J.S.A. § 12A:2-313(1)(a). "[T]he plaintiff in a warranty action need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Fabricant*, 2020 WL 373348, at *6 (D.N.J. Jan. 23, 2020) (quoting *Ford Motor Credit Co., LLC v. Mendola*, 427 N.J. Super. 226, 48 A.3d 366, 375 (N.J. Super. Ct. App. Div. 2012)). To support her claim based on an express warranty, Plaintiff alleges that the Intamin Defendants warranted that the Kingda Ka and "and all of its component parts, was safe and fit for its intended use." (TAC ¶ 41.) The Court finds that this allegation fails to identify the specific language used in any express warranty, and to whom, where, and when it was made, and, therefore, is too conclusory or vague to support a claim for failure to warn. *See Fabricant*, 2020 WL 373348, at *6 (noting that "[c]ourts in this district have dismissed express warranty claims that fail to identify specific language or sources of warranties"); *Tafaro*, 2018 WL 1535289, at *11 (dismissing failure to warn claim where "there [we]re no allegations concerning what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances, or even what was the nature of the danger posed by [the subject

rollercoaster] for which warning was required"). Accordingly, the Intamin Defendants' motion is granted with respect to Plaintiff's claim for breach of express warranty; that claim is dismissed without prejudice.

## IV.     CONCLUSION

In summary, the Court finds as follows: (1) the NJPLA does not subsume Plaintiffs' claim for "Negligence" against Six Flags; (2) the Court is unable to determine without further factual development whether Plaintiff's claims against the Intamin Defendants' are time-barred under the statute of repose; (3) Plaintiff has insufficiently pled her claim for "Products Liability/Design Defect/Manufacturing Defect"; (4) Plaintiff has sufficiently pled her claim for "Products Liability/Failure to Warn"; and (5) Plaintiff has insufficiently pled her claim for "Breach of Express . . . Warranty."  In addition, pursuant to the concessions of Plaintiff, her claims for loss of consortium and breach of implied warranty are dismissed with prejudice, and her claim for punitive damages is dismissed, without prejudice.  Accordingly, for the reasons set forth above, the motions of Six Flags and the Intamin Defendants are **GRANTED IN PART** and **DENIED IN PART**.[10] An appropriate order accompanies this Opinion.

DATED:  August 17, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[10] Plaintiff's cursory request for leave to amend is also denied at this time.  I decline to consider such a threadbare request, which fails to provide "any indication of the particular grounds on which amendment is sought." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 494 (3d Cir. 2017).  Instead, Plaintiff may file a separate motion seeking leave to amend (and attaching a proposed amended complaint), pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.