***NOT FOR PUBLICATON***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDI GARTEN, individually and as *guardian ad litem* for the minor plaintiffs OWEN HAVENS, SCARLETT HAVENS, and MASON HAVENS, her children,<br><br>Plaintiff,<br><br>v.<br><br>INTAMIN AMUSEMENT RIDES INT. CORP. EST., et al.,<br><br>Defendants. | Civil Action No. 3:19-cv-20040 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

      Plaintiff Brandi Garten sues Defendants Intamin Amusement Rides Int. Corp. Est. and Intraride, LLC, for neck injuries she suffered while riding Kingda Ka, a roller coaster at Six Flags Great Adventure theme park. Garten alleges that Defendants defectively designed certain safety components and breached an express warranty. Defendants move to dismiss Garten's Fourth Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Garten has neither pled a feasible alternative design nor pointed to specific warranty language of which she was aware when she rode the roller coaster. For the following reasons, Defendants' Motion to Dismiss is **GRANTED** and these claims are **DISMISSED** with prejudice.

      **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    *A. Facts*

      On August 24, 2019, Garten and her son went to Six Flags Great Adventure, a theme park in Jackson, New Jersey. *See* Fourth Am. Compl., ¶ 15 ("FAC"). During their visit, Garten's son

1

asked to ride Kingda Ka, touted as "the tallest and fastest" roller coaster of its kind. *Id.* Garten agreed, boarded, and engaged the safety harness. *Id.* ¶ 16. According to Garten, without inspection or instructions from staff, and absent any warning of "whiplash," the ride began, accelerating to 128 miles per hour in under four seconds and climbing 400 feet. *Id.* ¶¶ 18, 23, 29. Garten immediately "grabbed the handles [] and attempted to press herself back" in her seat. *Id.* She nevertheless "felt her upper body suddenly jerk[] forward, and her head jerk[] downward, so that her chin violently pushed into her chest," and "instantly felt severe pain at the back of her neck," which continued for the duration of the ride, approximately one minute. *Id.* ¶¶ 18-19. Garten exited in tears. *Id.* ¶ 19. When her pain did not subside the next day, she visited the emergency room, where a doctor diagnosed her with three herniated discs. *Id.* ¶ 25. Those injuries caused "a cascade of catastrophic [chronic] medical events," including neurological damage. *Id.*

B. *Procedural History*

Garten filed suit on November 11, 2019. *See* ECF No. 1. After amending three times, and voluntarily dismissing various parties[1] and claims,[2] Garten asserted negligence against Six Flags

---

[1] Garten amended for the first time on December 19, 2019. *See* ECF No. 5. Six Flags moved to dismiss that Complaint. *See* ECF No. 15. Intamin and Intaride also moved to dismiss. *See* ECF No. 17. Garten opposed both motions, *see* ECF Nos. 20-21, but after a teleconference with the Court, amended again to address a concern I raised about diversity jurisdiction. *See* ECF No. 24. Specifically, Garten removed all allegations regarding "John Doe" defendants and their residency. *Id.* However, because Garten added substantive allegations, I struck the Second Amended Complaint. *See* ECF No. 27. I then directed Garten to file a Third Amended Complaint that did not contain any "John Doe" allegations but was otherwise identical to the First Amended Complaint. *Id.* Garten did so on August 10, 2020. *See* ECF No. 28. Garten also voluntarily dismissed Six Flags Theme Parks, Inc., on the knowledge that it does not operate Six Flags Great Adventure, *see* ECF No. 16, as well as International Amusements Inc., Martin & Vleminckx USA, LLC, and Martin & Vleminckx, Ltd. *See* ECF Nos. 11-12. Defendants point out that Intaride also "had nothing to do with the subject rollercoaster," but Garten "has been unwilling to dismiss [the company] to date." Def. Br., at 1 n.1.

[2] Garten initially charged all defendants with "Loss of Consortium, Society, and Services" on behalf of her children, *see* TAC, ¶¶ 43-44, but conceded this claim, *see* ECF No. 21, at 9, which I dismissed with prejudice. *See* ECF No. 29, at 3 n.2. Garten also originally claimed punitive damages, but conceded this too, *see* ECF No. 21, at 9, which I dismissed with the caveat that she may "file a separate motion seeking leave to amend" if "evidence is later uncovered to support [it]." *See* ECF No. 29, at 5 n.3. I note, however,

2

Great Adventure as well as products liability and breach of express warranty against Intamin and Intraride. Garten charged Six Flags with failure to monitor patrons boarding Kingda Ka, *see* Third Amended Complaint ("TAC"), ¶¶ 37-39, and Intamin and Intraride with designing defective safety components, inadequately warning patrons about them, *id.* ¶¶ 30-38, and misrepresenting Kingda Ka as "safe and fit for its intended use." *Id.* ¶¶ 40-42. Garten asked for compensatory damages, punitive damages, interest, and costs. *Id.* ¶¶ 1-5.

Six Flags moved to dismiss on the grounds that the New Jersey Products Liability Act ("NJPLA") barred Garten's negligence claim. *See* ECF No. 15, at 5-9. I denied that motion because a theme park operator is not a "manufacturer, distributor, or seller" whose conduct is subsumed by the NJPLA. *See* ECF No. 30, at 9. Intamin and Intraride also moved to dismiss on the grounds that "New Jersey's Statute of Repose barred [Garten's] claims and . . . each claim was insufficiently pled." *See* Def. Br., at 6. I granted that motion in part and denied it in part. Because the allegations in the TAC are central to the parties' dispute over the FAC, I discuss them in detail. To support her design defect claim, Garten alleged that Defendants failed to:

> design the harness, seats, and restraints included in the said Roller Coaster in such a way as to eliminate[] and/or guard against the substantial risk of 'whiplash type injuries' that can result from the extreme speeds and torqueing [sic] forces generated by the Kingda Ka Roller Roaster . . . .
>
> Plaintiff . . . faced the danger of severe 'whiplash' type injuries . . . unless she was able to maintain her head and neck in a stationary position, in the face of consideration forces that might be imposed upon her head and neck from the torqueing [sic] forces of the said Roller Coaster . . . .

---

that under the New Jersey Punitive Damages Act, Garten must show "actual malice" or "wanton and willful disregard," N.J.S.A. 2A:15-5.12, which usually entails "circumstances of aggravation or outrage." *Dong v. Alape*, 361 N.J. Super. 106, 116 (App. Div. 2003). Garten further conceded that her breach of implied warranty claim is subsumed by the New Jersey Product Liability Act ("NJPLA"). *See* ECF No. 20, at 23. Finally, I construed the TAC not to assert a cause of action for intentional infliction of emotional distress. *See* ECF No. 29, at 10 n.6. The sole remaining claims in the FAC are therefore products liability (design defect and failure to warn) and breach of express warranty against Intamin and Intraride, and ordinary negligence against Six Flags. *See infra*.

> Plaintiffs' damages are the direct and proximate result of defective design . . . being that the said Kingda Ka Roller Coaster incorporated a harness device that fails to properly restrain the head and beck of the rider to protect against 'whiplash' type injuries, risking injury to the cervical spine of individual riders.

See TAC, ¶¶ 4, 19, 31.

I granted Defendants' motion on this claim without prejudice, because Garten's "general allegations about how the seats of Kingda Ka failed to prevent 'whiplash' type injuries say nothing about the relative risks and utilities of the existing design of the seats and harness device . . . or about whether an alternative, technologically feasible design could have prevented [her] injuries." See ECF No. 29, at 14. I also dismissed Garten's breach of express warranty claim without prejudice, holding that she "fail[ed] to identify the specific language used in any express warranty, and to whom, where, and when it was made." Id. at 18. I permitted Garten's failure to warn claim to proceed as pled. See ECF No. 29, at 17. Garten asked for leave to amend her design defect and express warranty claims on August 27, 2020, see ECF No. 31, which I granted.

C.  The Fourth Amended Complaint

Garten filed a Fourth Amended Complaint on September 3, 2020, in an effort to remedy the deficiencies in the TAC. See ECF No. 36. As to her products liability claim, Garten now alleges that Defendants:

> failed to design the seats, harnesses, restraints, and locking mechanisms in such a way as to comply with applicable New Jersey regulations, and rider safety requirements, by (a) discouraging both lateral movement and movement of the upper body, head and neck of the rider away from the headrest, and (b) well and closely restraining riders in the direction to resist the extreme acceleration forces generated by the Kingda Ka Roller Coaster . . . . [or]
>
> protect against . . . unreasonable risk of whiplash type injuries to the intervertebral discs of their necks and spines, even though one or more alternative, technologically feasible designs existed at the time of the manufacture of the said harness devices, locking mechanisms, and seatback headrests, as well as thereafter, which were and are capable of sufficiently discouraging both lateral movement of the rider's head and neck, as well as movement away from the headrest, as required

4

> by the said regulations, without impairing the usefulness of the said harness devices, locking mechanisms and seatback headrests in any significant way . . . .
>
> [and] incorporated a harness device and locking mechanism, and seatback headrest that . . . failed to (a) discourage both lateral movement and movement of the upper body, head and neck of the rider, or to sufficiently discourage movement of the rider's upper body, head and neck away from the headrest, and failed to (b) well and closely restrain riders in the direction to resist the extreme acceleration forces generated by the Kingda Ka Roller Coaster.

*See* FAC, ¶¶ 4, 17, 29.

As to her express warranty claim, Garten points to a 2017 promotional brochure apparently printed in Sweden, twelve years after Kingda Ka opened to the public, which states that "Intamin's products are used and enjoyed by millions of guests and passengers worldwide on a daily basis, [and] safety is always of the very first consideration for the Intamin team and partners from development to installation to testing of every project." *Id.* ¶ 40; Ex. A. Garten also vaguely alludes to a 2005 operating manual in her brief. *See* Pl. Br., at 10-11.

D.  The Present Motions

Defendants moved to dismiss the FAC on October 1, 2020. *See* ECF No. 40. They argue that Garten still fails to plead a viable design defect claim because she does not allege "what an alternatively-designed harness device would have looked like," but instead simply declares that such designs were available, then "recites the elements of a risk-utility analysis." Def. Br., at 3, 12. Defendants also argue that Garten "does not allege that she relied upon [the 2017 brochure] in any way, or that she even saw it," Def. Br., at 3, 7, improperly proffers the 2005 operating manual, *see* Def. Rep. Br., at 11, and fails to establish that she "ever saw any statements in the [] manual" or "what statements in [it] form a purported warranty" in any event. *Id.* at 3. Plaintiff opposes, insisting that the FAC is sufficiently specific to warrant discovery.

5

## II.     LEGAL STANDARD

A court may dismiss an action under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

6

### III. DISCUSSION

*A. Garten's Design Defect Claim*

The gravamen of Defendants' motion is that Garten does not plead a feasible alternative design to the defects she identifies in Kingda Ka's safety mechanisms, even with the instructions set forth in my Opinion dismissing in part the TAC. *See* Def. Br., at 2. Under the NJPLA,[3] a product is defective if it is not "reasonably fit, suitable or safe for its intended purpose." *See* N.J.S.A. § 2A:58C-2; *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365 (App. Div. 2010). In addition to the NJPLA's pleading requirements for products liability claims in general, *see Myrlak v. Port Auth. of New York & New Jersey*, 154 N.J. at 96-97 (N.J. 1999) (stating four elements), a plaintiff seeking to establish a design defect in particular must allege a feasible alternative that would prevent her injuries without substantially impairing the intended function of the product, or that the design's risks outweigh its utility. *See, e.g.*, *Lewis v. Am. Cyanamid Co.,* 155 N.J. 544, 571 (1998) ("Plaintiffs who assert that the product could have been designed more safely must prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible."); *Mendez v. Shah*, 28 F. Supp. 3d 282, 297-98 (D.N.J. 2014) (imposing this burden at dismissal stage); *Schraeder v. Demilec (USA) LLC*, No. 12-6074, 2013 WL 5770670, at *2 (D.N.J. Oct. 22, 2013) (same).

The allegations in Garten's FAC continue to fall short. Essentially, Garten remedies her TAC by adding specificity as to the flaws in Defendants' current design. *See, e.g.*, FAC, ¶ 4; *supra*. According to Garten, at least three safety components failed because they did not prevent all head/neck movement, or permitted too much of it. Whatever the merits of that contention, it is not equivalent to alleging *some other design without such flaws*, which is an "additional" element of

---

3   The NJPLA "establishe[s] the sole method to prosecute a product liability action." *See Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (quotation and citations omitted).

7

Garten's *prima facie* case, given that she has never pled facts which I could weigh in a risk-utility analysis.[4] *See, e.g.*, *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 825 (D.N.J. 2019) (describing "the additional pleading requirements of defective design—the existence of an alternative design").

Like the TAC, the FAC fails because it conflates a product defect with a safer product design.[5] Merely pointing out the former—no matter how numerous or "highly specific," *see* Pl. Br., at 9—does not *ipso facto* establish the latter. What matters is not only that there is a problem with the product which allegedly caused the injury, but that *by comparison* it is more dangerous than some other type or version in existence at the time of manufacture. Just as evaluating risk-utility is relative, *see O'Brien v. Muskin Corp.*, 94 N.J. 169, 184 (1983), so too is evaluating alternative designs, yet Garten does not propose any comparators. If the "mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect," then the same is certainly insufficient to allege an alternative feasible product. *See Mendez*, 28 F. Supp. 3d at 297 (quotations and citation omitted).

Finally, although both parties extensively cite *Tafaro v. Six Flags, LLC*, No. 17-5607, 2018 WL 1535289 (D.N.J. Mar. 29, 2018), my decision in that case cuts against Garten. In *Tafaro*,

---

4   *See, e.g.*, *O'Brien v. Muskin Corp.*, 94 N.J. 169, 182 (1983) (identifying seven such factors, and holding that "[a]n evaluation . . . may justify a conclusion that even though there is presently no alternative design which would make a product safer, the product is 'so dangerous and of such little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability of harm to others'").

5   Garten attached "examples of alternative designs" to a prior opposition brief. *See* ECF No. 21. Because such facts appeared for the first time in response to Defendants' dismissal motion, I declined to consider them. *See* ECF No. 29, at 14-15 n.7; *Commonwealth of Pa ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Curiously, Garten did not attach these (or any others) to her FAC or opposition, nor did she include any factual allegations about them.

plaintiff alleged various design defects in El Toro, another Six Flags roller coaster. Specifically, quoting from the Complaint,

> the seating for said ride was improperly constructed, the materials were not suitable to protect patrons including patrons such as the minor plaintiff herein, the seat back was not high enough to prevent plaintiffs' [sic] head from being jolted back due to the strong forces of the roller coaster [sic], causing her to hit her head and neck on the back of the seat. The coaster was designed and constructed with [an] improper containment system for a patron of the minor plaintiff's size and weight, subjecting her to excessive movement and there were insufficient restraints subjecting the minor plaintiff to excessive motion and movement inside the roller coaster [sic] car and such other defects as investigation of the roller coaster [sic] will reveal.

*Id.* at *11.

I rejected plaintiff's claims on the grounds that she never proposed a feasible alternative design for El Toro's seating. *Id.* at *12. Although the allegations here are more specific than the allegations in *Tafaro*, they are identical (and inadequate) in the following (dispositive) respect: they each involve the ways in which "[the roller coaster's] design [is] problematic," while saying nothing about available alternatives to prevent such defects, an element which demands its own factual averments. *Id.* at *12. For example, as in *Tafaro*, Garten fails to allege "other, comparable roller coasters [ ] in which adequate neck and head support and body restraints are provided." *Id.*; *see also Hindermyer*, 419 F. Supp. 3d at 826 (finding it "damning" that, although plaintiff proposed an alternative design, it was "designed to be removed" whereas the defective product was "permanent," which made the alternative an "inadequate comparator[]").

In short, while Garten's FAC improves on her TAC, it does so in an irrelevant sense: by describing in greater detail only Kingda Ka's defects. Although I am mindful that Garten need not prove a feasible alternative design at this stage, she must still include some such facts to that end, but all she has offered is a bare assertion that a better design "exists." Unequipped with comparators, Garten cannot plausibly allege that the problems with Kingda Ka's safety

mechanisms, to the extent there are any, give rise to liability under the NJPLA. I **GRANT** Defendants' motion and **DISMISS** this claim.[6]

### B. Express Warranty Claim

Garten also claims that Defendants breached an express warranty by misrepresenting Kingda Ka as safe to ride. Under New Jersey law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J.S.A. § 12A:2-313(1)(a). "[T]he plaintiff in a warranty action need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Fabricant v. Intamin Amusement Rides Int. Corp. Est.*, No. 19-12900, 2020 WL 373348, at *6 (D.N.J. Jan. 23, 2020); *Ford Motor Credit Co., LLC v. Mendola*, 427 N.J. Super. 226, 242 (App. Div. 2012).

---

[6] Garten also alleges that Defendants violated various unidentified New Jersey regulations. *See* FAC, ¶ 17 ("In addition, the Product Liability defendants failed to design the seats, harnesses, restraints, and locking mechanisms in such a way as to comply with applicable New Jersey regulations."); *id.* ¶ 29 (arguing that Kingda Ka does not "restrain riders in the direction to resist the extreme acceleration forces . . . as required by applicable regulations"). These are the sum total of Garten's pleadings on this point. Yet, in opposing Defendants' dismissal motion, Garten's counsel asserts that "Defendants can easily determine from their review of Chapter 14A of the [New Jersey Administrative] Code which of those regulations would apply to the allegation in [the] Complaint." Pl. Br., at 6. This requires additional comment from the Court. Without question, it is on the pleader to show why specifically she is entitled to relief, not a defendant to scour the annals of state law to determine that she is not, or else remain in the dark indefinitely as to the basis for a claim. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (stating that pleading is designed to "focus litigation on the merits of a claim"); Charles E. Clark, *The New Federal Rules of Civil Procedure: The Last Phase—Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure*, 23 A.B.A. J. 976, 977 (1937) ("We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear."). Counsel's position would distort the liberal pleading rules far beyond what they are designed to bear. *See Twombly*, 550 U.S. at 555 (stating that the purpose of Rule 8 is to "give *the defendant* fair notice of what the . . . claim is and the grounds upon which it rests") (emphasis added). Counsel himself appears not to know which regulations apply, and improperly concludes that Defendants can wait until discovery provides the answers. *See* Pl. Br., at 6 ("Defendants will receive more specific citations . . . when the report of [Garten's] engineering expert is supplied."). In any event, the allegations in the FAC fail to state with any facial plausibility a claim for relief on the basis of state regulations. *Accord Hamilton v. Dolce*, No. 18-2615, 2019 WL 4509375, at *7 (D.N.J. Sept. 19, 2019) (dismissing claim because "the complaint is completely silent regarding what specific and express provisions the Administrative Code Defendants purportedly violated").

Garten alleges that a 2017 promotional brochure apparently printed in Sweden, twelve years after Kingda Ka opened to the public, establishes an express warranty. The brochure states that "Intamin's products are used and enjoyed by millions of guests and passengers worldwide on a daily basis, [and] safety is always of the very first consideration for the Intamin team and partners from development to installation to testing of every project." *See* FAC, ¶ 40. This allegation lacks merit. First, Garten does not point to any actual warranty language in the brochure. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (characterizing plaintiffs' express warranty allegations as "bald assertions that fail to identify specific affirmations or promises"); *Simmons v. Stryker Corp.*, No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) (dismissing claim because it was "devoid of any 'factual matter' to support the existence of an express warranty"); *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *6 (D.N.J. Jan. 14, 2008) (holding that references to "press releases" or "assurances of safety," as opposed to specific statements, cannot survive dismissal); *Heisner v. Genzyme Corp.*, No. 08-593, 2008 WL 2940811, at *8-9 (N.D. Ill. July 25, 2008) (dismissing claim where plaintiff failed to specify any particular affirmation or promise). I rejected the allegations in the TAC for precisely these reasons. *See* ECF No. 29, at 18. The language is puffery at most.

Second, the brochure does not reference Kingda Ka at all. Third, it is unclear to whom the statements in the brochure were made, but they appear to be directed at theme parks buying roller coasters, not patrons riding them. Finally, it is highly unlikely that Garten knew about the brochure before deciding to ride Kingda Ka, or that it formed any part of the basis of her bargain with Defendants. Garten certainly did not so allege in the FAC. *See In re: Elk Cross Timbers Decking Mktg.*, No. 2577, 2015 WL 6467730, at *28 (D.N.J. Oct. 26, 2015) (collecting dozens of cases requiring plaintiff to plead that she knew about the warranty, relied on it, and that it induced her

action); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 14-3722, 2015 WL 4591236, at *26-27 & n.32 (D.N.J. July 29, 2015) (same); *Greisberg v. Boston Scientific Corp.*, No. 19-12646, 2020 WL 4435409 at *5 (D.N.J. Aug. 3, 2020) ("With respect to the 'basis of the bargain' element, a plaintiff must allege that she 'read, heard, saw or knew of the advertisement containing the [express warranty]' when choosing to use the product."); *cf. Smith v. Merial Ltd.*, No. 10-439, 2011 WL 2119100, at *7 (D.N.J. May 26, 2011) (rejecting the argument that plaintiff must prove that she read, saw, or heard a warranty, but only where there is no question that it was included with sale of product and that plaintiff was aware of it).

Perhaps recognizing this, Garten abandons the brochure in her opposition brief, substituting instead a 2005 operating manual printed fourteen years before her injury. But she provides no information about what is in it, not even one sentence; admits that, if anything, it "comprised Defendants' . . . representations to buyer Six Flags," not to her; and erroneously states that Defendants withheld it until it was too late. *See* Pl. Br., at 10. This is inadequate for the same reasons as the brochure, and for the additional reason that it is improper to supplement or amend a pleading in response to a 12(b)(6) motion. *See supra*. I **GRANT** Defendants' motion and **DISMISS** this claim.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the design defect claim and the breach of express warranty claim is **GRANTED**.[7] Only Garten's failure to warn claim against Intamin and Intraride, and ordinary negligence claim against Six Flags, remain in this litigation.

**DATED**: May 18, 2021                                        /s/ Freda L. Wolfson
                                                               Hon. Freda L. Wolfson
                                                               U.S. Chief District Judge

---

7       If Garten seeks to re-plead these claims, she must proceed by a motion with the proposed amended complaint attached.